UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LAGUERRE LENSENDRO,
        Plaintiff,


v.                                                              CIVIL ACTION NO. 25-10555-MPK


BERKSHIRE BANK,
        Defendant.


ORDER ON THE MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (#2)
<u>AND TO SHOW CAUSE</u>


KELLEY, U.S.M.J.

        Laguerre Lensendro, a Connecticut resident who is representing himself, has filed a

complaint against Berkshire Bank seeking relief because of its refusal to process his application

for a $1 million loan. (#1.) For the reasons set out below, Lensendro will be allowed to proceed *in*

*forma pauperis*, however, if he wishes to prosecute this action, he must, within thirty-five (35)

days of the date of this Order, show why this action should not be dismissed. Failure to do so may

result in dismissal of this action by a United States District Judge.

I. <u>Order on the Motion for Leave to Proceed *In Forma Pauperis* (#2)</u>.

        On review of Lensendro's "Application to Proceed in District Court Without Prepaying

Fees or Costs," *see* #2, the court finds that he is without funds to pay the filing fee. Thus, he will

be allowed to proceed *in forma pauperis*.

II. <u>Order to Show Cause</u>.

        Because Lensendro is proceeding *in forma pauperis*, his complaint is subject to preliminary

screening under 28 U.S.C. § 1915(e)(2). Under § 1915(e)(2)(B)(i), a court must dismiss an action

that is "frivolous or malicious" and under § 1915(e)(2)(B)(ii), a court must dismiss an action that "fails to state a claim on which relief may be granted." A complaint is "frivolous" if it "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

To state a claim on which relief may be granted, the complaint "must 'contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Godfrey v. Godfrey*, No. 1:24-cv-13124-JEK, 2025 WL 1594482, at *1 (D. Mass. June 5, 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678)).

Lensendro is representing himself therefore, the court construes his complaint liberally. Further, the court accepts the well-pled allegations in the complaint as true and draws all reasonable inferences in Lensendro's favor. *See Kersey v. Trump*, No. 1:24-cv-11943-JEK, 2025 WL 654110, at *1 (D. Mass. Feb. 12, 2025) (citations omitted).

A. The Complaint.

According to the complaint and the attachments to the complaint, on January 17, 2025, Lensendro used Berkshire Bank's website to submit an application for a $1 million loan. Separately, he sent to its headquarters an "INTERNATIONAL BILL OF EXCHANGE" as collateral ("Bill"). *See* #1 ¶¶ 6-7; *see also* ##1-4, #1-5 at 6. The Bill, dated January 17, 2025, identifies "LENSENDRO LAGUERRE" as the "Payor" and "BERKSHIRE BANK" as the "Payee" and provides that $1,000,000 is "Payable on demand." It also reads: "federal reserve act section 401 security, bill of exchange, legal tender a united states government obligation, as authorized by statute." It is signed by Lensendro, "[w]ithout recourse." (#1-4.)

On January 21, 2025, an Underwriter at Berkshire Bank contacted Lensendro. The Underwriter and Lensendro exchanged several emails. At 9:34 AM, the Underwriter explained to Lensendro that the product he applied for was unsecured with a maximum loan amount of $50,000. (#1-5 at 1.) The Underwriter asked:

> What would you be looking to use as collateral?
>
> What are you looking to use these funds for?
>
> How do you plan to pay back this loan being a student and only hav[ing] an income of $600/month?

*Id*. The Underwriter also asked for authorization to pull Lensendro's credit report "if [he] would like to proceed." *Id*.

> At 1:47 PM, Lensendro responded:
>
> Thank you for your response but [I] want to be clear, I [don't] want a $50,000 extension[.] I want what [I] applied for which is $1,000,000. I [don't] know how you are going to make it happen but it is not for $50,000. The advance will be in the sum of $1,000,000.
>
> Is that understood?

*Id*. at 2.

At 2:07 PM, the Underwriter responded: "I will cancel this application then as we do not have a loan product that allows for the loan amount you are looking for." *Id*. at 3.

At 2:51 PM, Lensendro asked: "Ok then what do [you] have?," adding at 2:54 PM: "Maybe we can come to a meeting ground." *Id*. at 4.

At 2:55 PM, the Underwriter responded: "We offer term loans (flex loans as described below) or a Power Line of Credit (what you applied for) that has a maximum loan amount of $50,000." *Id*. at 5.

At 3:04 PM, Lensendro explained that when he submitted the application online, the website did not prevent him from seeking more than $50,000, which, he argued, would lead a reasonable person to believe that higher loan amounts were available. He continued: "Do [you] not issue loans for over 100k[?] [W]hat about when someone is trying to buy a house? Are [you] going to say 'hey [don't] buy a house over 100k[,] we cannot help you if you attempt to do so.' Do [you] see my point?" *Id*. at 6.

At 3:09 PM, the Underwriter responded:

The system does not allow us to stop you from entering any amount when you apply but when you click on the page for the line of credit, it states loan amounts $5,000-$50,000. Again, you applied for an unsecured loan product that has maximum loan amounts. Loans to purchase a house would be a mortgage which is an entirely different type of loan and requirements and has a completely separate area on our website.

*Id*.

Thereafter, Lensendro wrote: "I see mortgages require collateral which is the house the person is going to buy. But for unsecured loans [you] are unwilling to extend so much credit without guarantees I see, you are saying [you] need collateral in order to extend such substantial amount of credit." *Id*. at 7. At 3:18 PM, the Underwriter responded, simply: "Correct." *Id*.[1]

In two emails later that afternoon, Lensendro informed the Underwriter that he had sent collateral to headquarters, providing the tracking number. In one email he asked the Underwriter to contact headquarters and verify that the package had arrived and for her to let him know what the next steps would be. *Id*. at 7. In the other, he asked if she had contacted headquarters regarding the collateral, and whether there was anything else she needed from him to move the process

---

[1] Lensendro interpreted this response as follows: "[The Underwriter] was not willing to extend so much credit without guarantees and needed collateral to extend such a substantial amount of credit." (#1 ¶ 9.)

forward. *Id*. at 8-9. Lensendro alleges that the Underwriter did not respond to either of these two emails. (#1 ¶¶ 10-13.)

Lensendro received a "NOTICE OF ADVERSE ACTION" dated January 23, 2025 ("Notice"), indicating that his request for a $1,000,000 "PERSONAL LINE OF CREDIT" was "DECLINED" and providing the following "PRINCIPAL REASON(S)": "CREDIT APPLICATION INCOMPLETE." (#1-6); *see also* #1 ¶ 14.

Lensendro denies that Berkshire Bank specified what about the application was incomplete or that Berkshire Bank gave him time to provide the missing information or informed him of the consequences if he did not provide the missing information. (#1 ¶ 15.)

Count 1 alleges that Berkshire Bank violated 12 C.F.R. § 1002.9(c)(2) by immediately taking an adverse action on Lensendro's application, "falsely" claiming that the application was incomplete,[2] without giving him an opportunity to correct the alleged deficiency. (#1 ¶ 20.)

Count 2 alleges that, in violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(a), Berkshire Bank discriminated against Lensendro by refusing to process the application and by retaining the Bill and falsely claiming that the application was incomplete. (#1 ¶¶ 23, 29.)

Count 3[3] alleges that Berkshire Bank violated 12 C.F.R. § 1026.10(a) by failing to credit his payment to his account on receipt. Specifically, Lensendro alleges:

> I tendered a Bill of Exchange in the amount of $1,000,000 [] for the credit advance I requested from Berkshire Bank.

> Under 12 U.S.C. § 411 and § 412, financial institutions may issue federal reserve notes when collateral of equal or greater value is tendered, and the Bill of Exchange was provided in accordance with those legal requirements.

---

[2] Lensendro alleges that because he received a confirmation number for his application, the application was in fact complete. (#1 ¶ 28.)

[3] In the complaint, this is labeled as a second "Count 2." (#1 at 5.)

Because this Bill of Exchange was necessary to secure the credit advance, it constitutes a finance charge under 15 U.S.C. § 1605, as it was [] indirectly imposed as an incident to the extension of credit.

Since the finance charge was incurred upon tendering the Bill of Exchange, Berkshire Bank was legally obligated under 12 CFR § 1026.10(a) to credit the payment as of the date of receipt.

(#1 ¶¶ 31-34.)

Count 4 alleges unjust enrichment, where Berkshire Bank "retain[ed] the Bill of Exchange valued at $1,000,000 without applying it to [Lensendro's] account or returning its equivalent value." *Id*. ¶ 36.

Lensendro seeks damages. (#1 ¶¶ 41-43, 48-49.) He also seeks a declaration that Berkshire Bank violated 15 U.S.C. § 1691(a), 12 C.F.R. § 1002.9(c)(2), and 12 C.F.R. § 1026.10(a). Finally, he seeks an injunction compelling Berkshire Bank to process the Bill, pursuant to 12 U.S.C. §§ 411 and 412. (#1 ¶¶ 46-47.)

    B. <u>Discussion</u>.

        1. <u>Discrimination: Count 2 and the request for declaratory relief</u>.

The ECOA provides that it is unlawful

for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction…on the basis of race, color, religion, national origin, sex or marital status, or age…[or] because all or part of the applicant's income derives from any public assistance program; or…because the applicant has in good faith exercised any right under this chapter.

*See* 15 U.S.C. § 1691(a)(1)-(3).

As Lensendro should know, when bringing such a claim, he must plead sufficient factual content that allows the court to draw the reasonable inference that the putative creditor discriminated against him "*based upon a protected characteristic*;" he may not sue under § 1691(a) just because the putative creditor has done something he does not like. *Laguerre v. American*

*Express N.A.*, No. 3:25-cv-00256-AWT, 2025 WL 2695054, at *4 (D. Conn. May 8, 2025) (Richardson, M.J.) (involving Lensendro) (emphasis in original); *see Lensendro v. Young, et al.*, No. 3:24-cv-1760-AWT, 2025 WL 1104278, at *3 (D. Conn. April 14, 2025) (involving Lensendro; "Nowhere in the Amended Complaint does the plaintiff allege facts that could show that he was denied credit on some prohibited basis").

This court may take judicial notice of decisions of other courts, although it may not take judicial notice of facts within those decisions, unless the facts meet the requirements of Fed. R. Civ. P. 201(d). *Jones v. Bank of N.Y. as Trustee for Certificate Holders CWABS, Inc.*, 542 F. Supp. 3d 44, 51, n.3 (D. Mass. 2021). From its search of public records of the United States District Court for the District of Connecticut, the court is aware that Lensendro has filed at least ten other lawsuits, including *American Express*, *supra*, and *Young*, *supra*.[4] As noted above, the *American Express* and *Young* cases, like this case, involve claims of discrimination under the ECOA. In the

---

[4] Lensendro voluntarily dismissed one of the ten. *Lensendro v. Capital One*, No. 3:23-cv-01030-VAB. He pursued, or is pursuing, nine. *See Lensendro v. Key Bank N.A.*, No. 3:24-cv-01108-KAD (complaint for breach of contract dismissed for failure to state claim with leave to amend; amended complaint dismissed with prejudice; affirmed); *Lensendro v. Experian*, No. 3:24-cv-01888-AWT (complaint under Fair Credit Reporting Act (FCRA) dismissed for failure to state claim with leave to amend; amended complaint not timely filed), *see also* 2025 WL 1786085; *Lensendro v. TransUnion LLC*, No. 3:25-cv-00128-AWT (complaint under the FCRA dismissed for failure to state claim with leave to amend; presently on appeal, No. 25-1888), *see also* 2025 WL 1104611; *Lensendro v. Experian*, No. 3:25-cv-00154-AWT (complaint under FCRA dismissed for failure to state a claim with leave to amend; time within which to file amended complaint remains), *see also* 2025 WL 3043348; *Lensendro v. First Source Advantage, LLC*, No. 3:35-cv-00522-AWT (under Fair Debt Collection Practices Act, transferred from the United States District Court for the Southern District of New York and pending); *Laguerre v. Bank of America, N.A.*, No. 3:25-cv-00937-AWT (complaint for breach of contract and claim that application for credit was sale of security dismissed as frivolous; objection pending), *see also* 2025 WL 1940003; *Lensendro v. Bozzuto Mgmt. Co.*, No. 3:25-cv-01009-AWT (complaint for securities fraud; motion to dismiss pending). A complaint in the Southern District of New York was dismissed for lack of subject matter jurisdiction, with leave to amend. *Laguerre v. Related Mgmt. Co*., No. 25-cv-5594-LLS; *see also* 2025 WL 2998053.

*American Express* case, Lensendro did not allege that American Express discriminated against him based upon a protected characteristic, so Magistrate Judge Richardson, pursuant to 28 U.S.C. § 1915(e)(2)(B), recommended dismissal of that ECOA claim. Lensendro's objection to the recommendation is pending. No. 3:25-cv-00256-AWT, ECF No. 14.

*Young* was filed in state court and removed; District Judge Thompson granted the defendants' motion to dismiss Lensendro's first amended complaint, allowing leave to amend. Lensendro filed a second amended complaint, against Capital One Bank alone, which has moved to dismiss the second amended complaint. No. 3:24-cv-1760-AWT, ECF Nos. 32-35. In the first amended complaint, Lensendro claimed discrimination based upon his level of income, rather than his race, color, religion, national origin, sex, marital status, or age, the source of his income, or his exercise of a statutory right. 2025 WL 1104278, at *3. He makes the same claim in his second amended complaint. No. 3:24-cv-1760-AWT, ECF No. 32 ¶ 2.

Here, too, Lensendro does not allege that Berskshire Bank discriminated against him based upon a protected characteristic. He simply alleges that Berkshire Bank discriminated against him. (#1 ¶¶ 23, 29.) He thus fails to state a plausible discrimination claim, and Count 2 and the claim for declaratory relief under the ECOA are subject to dismissal.

　　　2. Claims related to the Bill: Counts 3 and 4 and the
　　　requests for declaratory and injunctive relief.

This case is not the first in which Lensendro applied for a sizable loan, sent a "Bill of Exchange" to the bank as supposed collateral, then claimed that the bank engaged in misconduct by failing to process the application or return the "Bill of Exchange." In the *Key Bank* case, Lensendro alleged breach of contract where Key Bank did not process the $125,000 loan application and retained the "Bill of Exchange." 2024 WL 3738943, at *1-2 (D. Conn. July 15, 2024) (Spector, M.J.) (finding that the complaint failed to plausibly allege the existence of an

agreement), *report and recommendation adopted*, No. 3:24-cv-01108-KAD, ECF No. 12 (D. Conn. Aug. 1, 2024); *see also* No. 3:24-cv-01108-KAD, ECF No. 14 (D. Conn. Aug. 14, 2024) (Spector, M.J.) (noting that the amended complaint alleged nearly identical facts, and recommending dismissal with prejudice), *report and recommendation adopted*, No. 3:24-cv-01108-KAD, ECF No. 16 (D. Conn. Sept. 6, 2024), *aff'd*, No. 24-2609, 2025 WL 1805211, *2 (2d Cir. July 30, 2025) (finding that the appeal lacked an arguable basis in law or fact).

Here, rather than breach of contract, Lensendro alleges that he tendered the Bill in accordance with 12 U.S.C. §§ 411 and 412 and Berkshire Bank violated 12 C.F.R. 1026.10(a)[5] by failing to credit that payment and has been unjustly enriched by retaining the Bill. *See* #1 ¶¶ 30-39. Lensendro does not use these terms, but his claims related to the Bill could be rooted in the "redemption" theory commonly associated with the sovereign citizen movement.[6] Courts have

---

[5] Promulgated under the Truth in Lending Act ("TILA"), *see* 15 U.S.C. § 1601, *et seq*., 12 C.F.R. § 1026.10(a) provides that "[a] creditor shall credit a payment to the consumer's account as of the date of receipt…." *Id*. Lensendro claims that the Bill was necessary to obtain the loan, somehow making it a "finance charge" within the meaning of 15 U.S.C. § 1605. S*ee* #1 ¶ 33. 15 U.S.C. § 1605, by itself, does not provide a cause of action and any cause of action regarding an alleged failure to disclose a finance charge would lie under the specific provision of TILA requiring such disclosure. *Ball v. Landmark Credit Union*, No. 22-cv-69, 2022 WL 17832922, at *2 (E.D. Wis. Dec. 21, 2022) (Duffin, M.J.) Lensendro does not assert a claim under 15 U.S.C. § 1637(a), nor could he. Berkshire Bank denied the application. *Ball*, 2022 WL 17832922, at *2.

[6] "The sovereign citizen redemption theory typically includes the following elements:

> Many Sovereign Citizens believe that when the government began issuing legal tender in 1933, all Citizens were pledged as collateral for the national debt resulting from the loss of value from the gold standard. All Sovereign Citizens therefore have two identities: a real private individual and a fictional public person. Refusing to be used as collateral can hypothetically result in access to a trust fund held in the fictional person's name at the U.S. Treasury."

*Wood v. United States*, 161 Fed. Cl. 30, 34 (Fed. Cl. 2022) (cleaned up) (quoting Jessica K. Phillips, *Not All Pro Se Litigants Are Created Equally: Examining the Need for New Pro Se Litigant Classifications Through the Lens of the Sovereign Citizen Movement*, 29 Geo. J. Legal Ethics 1221, 1226 (2016)).

universally rejected the redemption and similar theories as frivolous. *See Slaughter v. US Cellular*, No. 23-cv-1642-PP, 2023 WL 9051307, at *5 (E.D. Wis. Dec. 29, 2023) ("As many courts have held, claims invoking the payment of debts by 'bills of exchange' are frivolous and should not be entertained by the court") (collecting cases, including *McGee v Nissan Motor Acceptance Corp.*, 619 Fed. Appx. 555, 555 (7th Cir. 2015) (the plaintiff's "bill of exchange mimics those consistently rejected by other courts as worthless")); *Harp v. Police and Fire Fed. Credit Union*, No. 23-cv-2577, 2023 WL 5152625, at *3 (E.D. Penn. Aug. 10, 2023) ("In other circumstances, a bill of exchange is certainly a valid financial instrument, often used to keep track of debt in international trade. ... But here, rather than a legally enforceable document noting an existing debt that [the credit union] owed to her, [the plaintiff] simply handwrote an array of financial buzzwords on her credit card statement and tried to pass this off to [the credit union] as valid legal tender for her credit card debt. This is not a valid financial instrument, and other courts nationwide have rejected such frivolous attempts to satisfy a debt through a fictitious bill of exchange") (cleaned up) (citations omitted); *Hennis v. Trustmark Bank*, No. 2:10-cv-20-KS, 2010 WL 1904860, at *5 (S.D. Miss. May 10, 2010) ("From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous") (citing, *inter alia*, *Bryant v. Washington Mut. Bank*, 524 F. Supp. 2d. 753, 758-60 (W.D. Va. 2007) (discussing "revisionist legal history and conspiracy theory" underlying claims that debtors may issue bills of exchange requiring the United States to pay their debts out of secretly held trust accounts for each citizen; observing that the plaintiff's claim that her "Bill of Exchange" "was a legitimate negotiable instrument is clearly nonsense in almost every detail" and finding that the plaintiff "did not tender payment, but rather a worthless piece of paper"), *aff'd*, 282 Fed. Appx. 260 (4th Cir. 2008) (per curiam)).

Regardless of their origin, Lensendro's claims related to the Bill, i.e. Counts 3 and 4 and the requests for declaratory and injunctive relief, are subject to dismissal as facially implausible. The authority Lensendro invokes for his putative issuance of the Bill is the Federal Reserve Act, specifically, 12 U.S.C. §§ 411 and 412. *See* #1-4 ("federal reserve act section 401 security…"); *see also* #1 ¶ 32 ("Under 12 U.S.C. § 411 and § 412, financial institutions may issue federal reserve notes when collateral of equal or greater value is tendered, and the Bill of Exchange was provided in accordance with those legal requirements"); #1 ¶ 37 ("I tendered the Bill of Exchange as collateral security for the requested credit advance in accordance with 12 U.S.C. § 411 and § 412, which recognize such instruments as valid obligations that secure an advance"). Neither provision allows Lensendro to issue a "bill of exchange, legal tender a united states government obligation." He is not part of "the Board of Governors of the Federal Reserve System," *see* 12 U.S.C. § 411 (governing issuance and redemption), nor is he a "Federal Reserve bank" or a "member bank of any Federal Reserve district," *see* 12 U.S.C. § 412 (governing application). *Compare Showers v. First Premier Bank*, No. 1:23-cv-02142-JRS, 2024 WL 1616316, at *1 (S.D. Ind. Apr. 2, 2024) ("'JAMES PAYTON SHOWERS' is not 'a bank';... 'JAMES SHOWERS' is not 'a member bank of the Federal Reserve'; and the so-called 'bill of exchange' is not a 'collateral security in accordance with 12 U.S.C. § 412'…. The whole edifice is nonsense"). Furthermore, the Federal Reserve Act does not create a private right of action. *See Harp*, 2023 WL 5152625, at *4 (the plaintiff "seems to suggest that [the credit union] was violating Section 16 of the Federal Reserve Act, 12 U.S.C. §§ 411-21, which governs the issuance and redemption of Federal Reserve notes. As a result, [the plaintiff] alleges that [the credit union] is subject to penalties under Section 29 of the Federal Reserve Act, 12 U.S.C. § 504, which imposes penalties on banks for an array of misconduct. But the imposition of civil penalties under Section 29 is carried out by federal

officials…") (citing *Benz-Puente v. Truist Fin.*, No. 23-cv-2682, 2023 WL 4763998, at *2 (E.D. Pa. July 26, 2023)).

> 3. <u>Claims related to the denial of the $1 million loan application:</u>
> <u>Count 1 and the request for declaratory relief.</u>

Promulgated under the ECOA, 12 C.F.R. § 1002.9 provides, in relevant part:

(a) Notification of action taken, ECOA notice, and statement of specific reasons—

(1) When notification is required. A creditor shall notify an applicant of action taken within:

> (i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application;
>
> (ii) 30 days after taking adverse action on an incomplete application, unless notice is provided in accordance with paragraph (c) of this section;
> …

(c) Incomplete applications—

(1) Notice alternatives. Within 30 days after receiving an application that is incomplete regarding matters that an applicant can complete, the creditor shall notify the applicant either:

> (i) Of action taken, in accordance with paragraph (a) of this section; or
>
> (ii) Of the incompleteness, in accordance with paragraph (c)(2) of this section.

(2) Notice of incompleteness. If additional information is needed from an applicant, the creditor shall send a written notice to the applicant specifying the information needed, designating a reasonable period of time for the applicant to provide the information, and informing the applicant that failure to provide the information requested will result in no further consideration being given to the application...

(3) Oral request for information. At its option, a creditor may inform the applicant orally of the need for additional information. If the application remains incomplete the creditor shall send a notice in accordance with paragraph (c)(1) of this section.

12 C.F.R. § 1002.9(a), (c).

The ECOA itself provides that "[w]ithin thirty days … after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1). 12 C.F.R. § 1002.2(f) defines "[a]pplication" as "an oral or written request for an extension of credit that is made in accordance with procedures used by a creditor for the type of credit requested" and defines a "completed application" as

> an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral)….

*Id*.

To begin, no well-pled allegations in the complaint support Lensendro's claim that because "a confirmation number…was issued[,]…the application was in fact complete." (#1 ¶ 28.) That claim is conclusory. The Underwriter explained that "if [he] would like to proceed," Lensendro would have to "provide authorization to pull [his] credit report." (#1-5 at 1.) Apparently, the application also did not indicate how Lensendro would be using the $1 million or how he planned to pay it back. *Id*.; *see also* 12 C.F.R. § 1002.2(f) (defining "completed application" as "an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant…)").

Moreover, the court very much doubts that an application seeking a loan in an amount many, many times the maximum is "complete" or even an "application" at all. *Cf.*, *e.g.*, *Ball*, 2022 WL 17832922, at *4 (granting summary judgment for the credit union where the plaintiff only provided his name, address, date of birth, phone number, and social security number, omitting

basic information such as income, expenses, and debts; the plaintiff's "submission to [the credit union] was so patently incomplete that it could not be characterized as an 'application' within the meaning of 12 C.F.R. § 1002.9(c). *See* 12 C.F.R. § 1002.2(f).… [The plaintiff] plainly failed to make a good faith effort to comply with [the credit union's] procedures.").

Nor does the regulatory language support Lensendro's apparent belief that when they receive incomplete applications, creditors must always provide written notice to the applicants specifying the information needed and allowing time to correct alleged deficiencies. Creditors have three options when they receive incomplete applications, and the first is to inform the applicants, in writing, of decisions on the applications. *See* 12 C.F.R. §§ 1002.9 (c)(1)(i); *see also Ball*, 2022 WL 17832922, at *4. Here, the plausible inference is that Berkshire Bank chose the first option. The Notice states that it "is a multi-purpose form" and "[w]ords or phrases preceded by a □ are applicable only if the □ is marked," and the words "We are unable to process your loan application because we require the following information to make a decision," are preceded by a □ that is not marked. (#1-6.)[7]

For all of these reasons, Lensendro's claims related to the denial of the $1 million loan application, i.e. Count 1 and for declaratory relief, are subject to dismissal as facially implausible.

III. <u>Summary</u>.

Accordingly, the court hereby orders:

1. The Motion for Leave to Proceed *In Forma Pauperis* (#2), is GRANTED, however,

---

[7] Or, perhaps, Berkshire Bank chose the third option (albeit, apparently not "orally" requesting the additional information), but found that the application remained incomplete and then informed Lensendro, in writing, of the decision on the application. *See* 12 C.F.R. § 1002.9(c)(3), (c)(1)(i). The court notes that even after Lensendro suggested that they "can come to a meeting ground," *see* #1-5 at 4, he continued to dispute that the product he applied for should have any maximum loan amount, *see id*. at 6. There is no indication that he sent a "Bill of Exchange" for any lesser amount. The Bill was for $1 million. (#1-4.)

2. If he wishes to prosecute this action, Lensendro must, within thirty-five (35) days of the date of this Order, show why this action should not be dismissed for the reasons set out above. Failure to do so may result in dismissal of this action by a District Judge.

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge

November 13, 2025